**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

OVANOVA, INC.
607 Sawmill Rd
Cedar Grove, NC 27231

OVANOVA ENERGY CORPORATION
607 Sawmill Rd
Cedar Grove, NC 27231

OVANOVA CONSTRUCTION SERVICES
LLC,
607 Sawmill Rd
Cedar Grove, NC 27231

OVANOVA SOLAR CORPORATION, and
607 Sawmill Rd
Cedar Grove, NC 27231

APPLE BAR ORCHARD LLC
3565 Bradley Way
Helena, Montana 59602

ATKINSON POULTRY, LLC
830 Seed Tick Dr
Darlington, South Carolina 29540

AUSABLE RIVER RANCH LLC
141 River Road
Lake Placid, New York 12946

BCGAN, LLC DBA BARRY FARM
1241 County Road 2425
Como, Texas 75431

BEN OR FARM LLC
860 McCullough Rd.
Cedar Grove, North Carolina 27231

BLAWSOME, LLC
1002 Cane Valley Lane
Chapel Hill, North Carolina 27516

CEDAR RIDGE EGG FARM LLC

Civil Action No. 25-2843

12575 Fm 269
Pickton, Texas 75471

CHARLES A FUNKHOUSER DBA
ROLLING HILLS FARM
994 Rolling Hills Ln
Baker, West Virginia 26801

CKM LLC DBA ELEVATE FITNESS
144 Churchill Drive
Sparta, Tennessee 38583

COOKEVILLE AUTO SALVAGE, LLC
1301 Shipley Road
Cookeville, Tennessee 38501

ELETICIA VARGAS DBA SIERRA
BLANCA HISTORIC LODGE
325 W El Paso St.
Sierra Blanca, Texas, 79851

HOWARD L WILSON II DBA WALNUT
GROVE FARM
427 Wilson Farm Rd
Moorefield, West Virginia 26836

JAMES MACKUS DBA MODERN
ELECTRIC COMPANY
226 Ridge Road
Oakland, Tennessee 38060

JAMISON LEE FRIESEN
6173 Fm 1166
Quanah, Texas 79252

JEFFREY CAREY DBA HIDDEN
VALLEY ACRES
241 Matt Rd
Fort Plain, New York 13339

JIMMY LYNCH
834 Lockwood Road
Farmerville, Louisiana 71241

LONG-CALLES FARMS, INC
484 Old Allenton Road

Lumberton, North Carolina 28358

MARK SUSTAIRE
0 Fm 3019, Saltillo, Texas 75494

MIGHTY TENDRIL FARM
8709 Allison Road, Cedar Grove, North
Carolina 27231

PVEGA VENTURES, LLC
489 County Road 4792 Cumby, Texas 75433

RICHARD YOUNG JR DBA
HORSEBRANCH FARM
205 West Horse Branch Trail
Darlington, South Carolina 29540

RODNEY A FUNKHOUSER DBA RF
MANUFACTURING CORP
1265 Brants Teets Rd
Baker, West Virginia 26801

RSR FARM
1770 Old Jackson Road
Somerville, Tennessee 38068

SOHEL KHAN DBA THREE DIAMONDS
FARM
467 Fm 2297, Sulphur Springs, Texas 75482

STANLEY REDDEN
791 Sardis Church Road
Farmerville, Louisiana 71241

THE ELECTRIC TRIBE LLC
607 Sawmill Rd W
Cedar Grove, North Carolina 27231

TINY ESCAPES, LLC
7928 North Carolina Highway 194 S
Todd, North Carolina 28684

WILDBUD NATIVES, LLC
600 Mill Creek Road
Marshall, North Carolina 28753

WILKINS FARMS, INC.
378 Dove Hollow Road,
Baker, West Virginia 26801

*Plaintiffs*,

    v.


UNITED STATES DEPARTMENT OF
AGRICULTURE
1400 Independence Avenue, S.W.
Washington, DC 20250;

BROOKE L. ROLLINS
in her official capacity as Secretary of
United States Department of Agriculture
1400 Independence Avenue, S.W.
Washington, DC 20250;

BASIL GOODEN
in his official capacity as Under Secretary
for Rural Development
1400 Independence Avenue S.W.
Washington, DC 20250;

DEBRA YOCUM
in her official capacity as Branch Chief –
Field Operations, Rural Business
Cooperative Services, USDA Rural
Development
1400 Independence Ave. SW, Rm 5803-S
STOP 3201
Washington, DC 20250;

JOHN BEELER
in his official capacity as USDA Regional
Coordinator Northeast
1400 Independence Ave. SW, Rm 5803-S
STOP 3201
Washington, DC 20250;

and

JOHN DOES 1-10,

in their official capacities as USDA
representatives,
Address Unknown

*Defendants.*

## COMPLAINT

Plaintiffs Ovanova, Inc., Ovanova Energy Corporation, Ovanova Construction Services LLC, Ovanova Solar Corporation (each referred to individually as "Ovanova" and collectively, as the "Ovanova Plaintiffs"), together with similarly situated applicants (collectively with the Ovanova Plaintiffs, "Plaintiffs"), bring this First Amended Complaint against the United States Department of Agriculture and its senior officials (collectively, "USDA" or "Defendants") for violations of the Administrative Procedure Act, the Rural Electrification Act, due process, and other federal law in connection with the USDA's administration of the Rural Energy for America Program (REAP). This case arises from the USDA's unlawful, retroactive application of unpublished evaluation criteria; unreasonable and unexplained delays in processing more than 90 REAP applications submitted by Plaintiffs; and a sustained pattern of arbitrary and inconsistent decision-making. In several cases, the Agency has attributed delays in application processing to the mere fact that applicants exercised their legal rights, for instance, citing the existence of pending litigation as a basis for pausing review, raising concerns of retaliation or improper procedural bias. The Agency further failed to comply with its own stated obligations to notify applicants when additional information was required to complete the review of an application. This obligation was formally codified in the Federal Register, Vol. 89, No. 135 (July 15, 2024), which mandates that applicants be given 15 days to respond to any identified deficiencies or to provide clarifications relevant to project eligibility, financial viability, or technical feasibility. However, Agency records, including

acknowledgment letters stored in the administrative file, demonstrate inconsistent adherence to this requirement, with numerous cases showing no documented notice prior to adverse decisions. This systemic failure deprived applicants of a fair opportunity to cure alleged deficiencies and resulted in the summary denial of otherwise eligible projects without meaningful procedural safeguards.

**INTRODUCTION**

1.    This case concerns the United States Department of Agriculture's (USDA) systemic failure to perform its statutory and regulatory obligations under the Rural Energy for America Program (REAP), and its unlawful treatment of over 90 grant applications submitted by the Plaintiffs and similarly situated applicants.

2.    The Ovanova Plaintiffs are a collection of affiliated renewable energy companies focused on designing and deploying solar and battery storage systems for rural agricultural producers and small businesses. With a strong track record of successful REAP-supported deployments, Ovanova has helped rural applicants in five states complete ten clean energy projects, while its broader installation portfolio spans 27 states nationwide.

3.    On or before October 1, 2024, Plaintiffs submitted REAP grant applications representing over $100 million in project value, in accordance with the USDA's published quarterly funding cycle deadline for Fiscal Year 2025. Under USDA's own program rules and prior practice, REAP applications were required to be reviewed and scored within approximately 90 days of submission. Plaintiffs submitted ungraded applications across multiple quarterly deadlines, including September 30, 2023; December 31, 2023; March 31, 2024; June 30, 2024; and September 30, 2024, each of which should have been processed by the close of the following quarter. However, the Agency failed to take timely action on these submissions, in some cases

leaving them ungraded well past their expected review windows. Instead of adhering to its established review schedule, the Agency selectively suspended grading activity for Plaintiffs' REAP applications during critical review periods in 2024, citing internal "due diligence" concerns specific to projects involving battery energy storage systems (BESS). According to Agency records, State Offices were instructed as early as April 2024 to pause processing obligations for all RES with BESS applications pending further review. During this period, the USDA ceased grading all of Ovanova's pending applications while engaging in prolonged back-and-forth over a single project selected for advancement. After litigation was initiated in September 2024, Agency communications were abruptly suspended until the case was dismissed months later, at which point grading resumed, again resulting in arbitrary and capricious adverse determinations. While there was no formal, agency-wide moratorium on grading, the USDA did halt the disbursement of approved funding and, as of July 1, 2025, announced that no previously submitted applications would be reviewed further, requiring instead that applicants re-submit starting October 1, 2025. Plaintiffs object to this effective nullification of timely filed applications and contend that USDA's refusal to grade them violates statutory deadlines, program rules, and principles of fair administrative process.

4.      Compounding the situation, USDA representatives have threatened Plaintiffs with retaliatory inaction, explicitly stating, on recorded calls, that if legal action were initiated, none of the applications would be graded at all. These statements confirm what the USDA's conduct already suggests: the agency has effectively abdicated its responsibility to evaluate previously submitted REAP grant applications, and is using the delay to create leverage over applicants while evading judicial scrutiny.

5.      The USDA's failure to process these applications, and its shifting of deadlines without notice or rulemaking, amount to a violation of the Administrative Procedure Act, a denial of due process, and an arbitrary refusal to perform a nondiscretionary duty. These acts have inflicted substantial and ongoing harm on rural communities, renewable energy developers, and applicants who relied on the USDA's published guidance and program deadlines.

6.      Plaintiffs seek declaratory and injunctive relief confirming that the USDA's conduct, including its retroactive imposition of new evaluation criteria, failure to provide required notice and opportunity to cure, and selective delays targeting applicants engaged in protected legal activity, violated governing statutes and regulations. Plaintiffs further seek to enjoin the USDA from applying such unlawful practices in future REAP funding cycles and to preserve the eligibility of previously submitted applications or substantially similar resubmissions from being penalized for delays caused by the Agency's own procedural failures. Plaintiffs do not at this time seek relief on behalf of any applications that have already received final denial or are pending appeal, as those matters are distinct and may raise individualized questions. Rather, this action challenges the USDA's unlawful suspension and refusal to evaluate already-filed REAP applications that remain ungraded and legally outstanding.

7.      This case thus presents urgent and systemic questions about administrative accountability, the protection of rural clean energy access, and the boundaries of agency discretion in federally funded development programs.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States, specifically the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, and the Rural Electrification Act, as amended by the 2008 Farm

Bill. Plaintiffs challenge the USDA's unlawful refusal to process and evaluate timely submitted grant applications under the REAP program, in violation of its statutory and regulatory duties.

9.      Jurisdiction is further proper under 28 U.S.C. § 1361, which authorizes the Court to issue a writ of mandamus compelling an officer or agency of the United States to perform a duty owed to Plaintiffs. The USDA's failure to evaluate submitted REAP applications, all of which have now been pending beyond the USDA's own published review periods, constitutes agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1).

10.     This Court also has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202, as there exists an actual and justiciable controversy between the parties regarding the USDA's administration of the REAP program, and the legal rights of Plaintiffs and similarly situated applicants to receive a timely and fair evaluation of their applications.

11.     Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e)(1) because the USDA is a federal agency headquartered in this District, and because a substantial portion of the decisions and omissions giving rise to this action— including the formulation of REAP program policy, national guidance, and coordination with the National Renewable Energy Laboratory (NREL), occurred at USDA headquarters in Washington, D.C.

12.     Additionally, the USDA officials with final policymaking authority for the REAP program, including the Secretary of Agriculture, the Under Secretary for Rural Development, and other senior administrators, are located in Washington, D.C., and have either issued or overseen the policies and inaction challenged herein. This District is therefore the most appropriate and efficient forum for adjudication of this administrative law action, and for any order compelling agency action unlawfully withheld on a nationwide basis.

## PARTIES

13.    Plaintiff Ovanova, Inc., Entity ID. 5814638, is a domestic corporation duly organized and existing under the laws of Delaware. It is in good standing with the Delaware Secretary of State as of September 25, 2024.

14.    Plaintiff Ovanova Energy Corporation, Entity ID. 3715123, is a domestic corporation duly organized and existing under the laws of the State of Delaware. It is in good standing with the Delaware Secretary of State.

15.    Plaintiff Ovanova Construction Services, LLC, Entity ID. 2627457, is a domestic limited liability company duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State.

16.    Plaintiff Ovanova Solar Corporation, Entity ID. 6288838, is a domestic corporation duly organized and existing under the laws of Delaware. It is in good standing with the Delaware Secretary of State.

17.    Plaintiff Apple Bar Orchard LLC, entity ID C1171321, is a domestic limited liability company duly organized and existing under the laws of Montana. It is in good standing with the Montana Secretary of State. Its principal place of business is 3565 Bradley Way, Helena, Montana 59602.

18.    Plaintiff Atkinson Poultry, LLC, entity ID 622620, is a domestic limited liability company duly organized and existing under the laws of South Carolina. It is in good standing with the South Carolina Secretary of State. Its principal place of business is 830 Seed Tick Dr, Darlington, South Carolina 29540.

19.    Plaintiff AuSable River Ranch LLC, entity ID L21000085803, is a domestic limited liability company duly organized and existing under the laws of Florida. It is in good standing with

the Florida Department of State, Division of Corporations. Its principal place of business is 141 River Road, Lake Placid, New York 12946.

20.     Plaintiff BCGAN, LLC dba Barry Farm, entity ID 804058266, is a domestic limited liability company duly organized and existing under the laws of Texas. It is in good standing with the Texas Secretary of State. Its principal place of business is 1241 County Road 2425, Como, Texas 75431.

21.     Plaintiff Ben Or Farm LLC, entity ID 1980070, is a domestic limited liability company duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State. Its principal place of business is 860 McCullough Rd, Cedar Grove, North Carolina 27231.

22.     Plaintiff Blawesome, LLC, entity ID 1525130, is a domestic limited liability company duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State. Its principal place of business is 1002 Cane Valley Lane, Chapel Hill, North Carolina 27516.

23.     Plaintiff Cedar Ridge Egg Farm LLC, entity ID 802410571, is a domestic limited liability company duly organized and existing under the laws of Texas. It is in good standing with the Texas Secretary of State. Its principal place of business is 12575 FM 269, Pickton, Texas 75471.

24.     Plaintiff CKM LLC dba Elevate Fitness, entity ID 1486740, is a domestic limited liability company duly organized and existing under the laws of Tennessee. It is in good standing with the Tennessee Secretary of State. Its principal place of business is 144 Churchill Drive, Sparta, Tennessee 38583.

25.    Plaintiff Cookeville Auto Salvage, LLC, entity ID 782203, is a domestic limited liability company duly organized and existing under the laws of Tennessee. It is in good standing with the Tennessee Secretary of State. Its principal place of business is 1301 Shipley Road, Cookeville, Tennessee 38501.

26.    Plaintiff Long-Calles Farms, Inc, entity ID 1329655, is a domestic corporation duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State. Its principal place of business is 484 Old Allenton Road, Lumberton, North Carolina 28358.

27.    Plaintiff Mighty Tendril Farm, entity ID 1690057, is a domestic business entity duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State. Its principal place of business is 8709 Allison Road, Cedar Grove, North Carolina 27231.

28.    Plaintiff PVEGA Ventures, LLC, entity ID 804673652, is a domestic limited liability company duly organized and existing under the laws of Texas. It is in good standing with the Texas Secretary of State. Its principal place of business is 489 County Road 4792, Cumby, Texas 75433.

29.    Plaintiff The Electric Tribe LLC, entity ID 1681611, is a domestic limited liability company duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State. Its principal place of business is 607 Sawmill Rd W, Cedar Grove, North Carolina 27231.

30.    Plaintiff Tiny Escapes, LLC, entity ID 2324295, is a domestic limited liability company duly organized and existing under the laws of North Carolina. It is in good standing with

the North Carolina Secretary of State. Its principal place of business is 7928 North Carolina Highway 194 S, Todd, North Carolina 28684.

31.     Plaintiff Wildbud Natives, LLC, entity ID 1501534, is a domestic limited liability company duly organized and existing under the laws of North Carolina. It is in good standing with the North Carolina Secretary of State. Its principal place of business is 600 Mill Creek Road, Marshall, North Carolina 28753.

32.     Plaintiff Wilkins Farms, Inc., entity ID 19033, is a domestic corporation duly organized and existing under the laws of West Virginia. It is in good standing with the West Virginia Secretary of State. Its principal place of business is 378 Dove Hollow Road, Baker, West Virginia 26801.

33.     Defendant United States Department of Agriculture (USDA) is an executive department and agency of the United States government, headquartered in Washington, D.C. The USDA is sued in its official capacity. The USDA is responsible for developing and executing federal laws related to farming, forestry, rural economic development, and food. In this case, the USDA is specifically involved through its administration of the Rural Energy for America Program (REAP).

34.     Defendant Brooke L. Rollins is sued in her official capacity as Secretary of Agriculture. As Secretary, she is responsible for the overall direction and supervision of the USDA, including its administration of the REAP program.

35.     Defendant Basil Gooden is sued in his official capacity as Under Secretary for Rural Development. In this role he oversees the USDA's Rural Development mission area, including the administration of the REAP program.

36.     Defendant Debra Yocum is sued in her official capacity as Branch Chief – Field Operations, Rural Business Cooperative Services, USDA Rural Development. In this role, she is responsible for overseeing field operations related to rural business and cooperative services, including aspects of the REAP program implementation.

37.     Defendants John Does 1-10 are sued in their official capacities as agency representatives whose identities are currently unknown to Plaintiffs. These individuals are believed to have been involved in the decision-making processes, evaluations, or implementations of policies related to the REAP program that are at issue in this lawsuit. Plaintiffs will amend this Complaint to include the true names and capacities of these Doe Defendants when they have been ascertained.

38.     The actions and decisions of these Defendants, in conjunction with the USDA, form the basis of this lawsuit, including but not limited to their roles in evaluating, approving, denying, or rescinding REAP grants, and in applying technical merit criteria to grant applications.

### PROCEDURAL REQUIREMENTS

### <u>Exhaustion of Administrative Remedies</u>

39.     Plaintiffs have exhausted all administrative remedies applicable to the claims presented herein, or in the alternative, exhaustion should be deemed excused due to the USDA's failure to provide a viable or good-faith process for adjudicating the grant applications at issue.

40.     This action challenges the USDA's failure to timely evaluate or issue determinations on 105 REAP grant applications submitted by Plaintiffs and similarly situated applicants. Of these, 10 were approved and successfully installed, 7 received adverse decisions (6 of which have been appealed), and 7 were withdrawn. The remaining 81 applications remain in procedural limbo, many for over a year, despite having been timely submitted in accordance with

USDA's quarterly funding cycle deadlines. If measured against the Agency's own 90-day review window, at least seven applications submitted on or before September 30, 2023, have remained ungraded for more than 18 months. None of these pending applications has received a final determination, rendering any form of administrative appeal unavailable or inapplicable. The USDA's prolonged inaction, inconsistent treatment of similarly situated applicants, and failure to follow its own review procedures have denied Plaintiffs meaningful access to the REAP program and violated core principles of fair process and regulatory consistency.

41.    Under USDA policy, REAP applications are to be reviewed and scored within 90 days of submission. Yet following the April 1, 2025, review deadline, USDA failed to perform any evaluations for the vast majority of applications filed during the prior cycle. As of July 1, 2025, the USDA announced it would not evaluate any of those previously submitted applications, instead requiring applicants to resubmit new applications starting October 1, 2025.

42.    This effectively cancels the prior application process without notice, justification, or recourse, leaving no administrative mechanism for applicants to challenge the USDA's inaction or preserve their place in line. The agency has neither issued denials nor conducted scoring, thereby denying applicants access to the standard appeal process.

43.    Moreover, USDA representatives have explicitly instructed applicants not to pursue internal appeals and have threatened retaliatory inaction if legal remedies were sought. In at least one recorded conversation, a USDA official stated that if litigation were filed, the agency would ensure the applications "never get graded." This conduct confirms the futility of further administrative steps and evidences agency bad faith.

44.    Courts have recognized exceptions to the exhaustion requirement where: The agency's action is final in effect but cloaked in delay; The agency has refused to act in violation

of a nondiscretionary duty; Or where exhaustion would be futile due to bad faith or the unavailability of meaningful relief. All three exceptions apply here.

45.     Plaintiffs accordingly invoke the Court's jurisdiction under 5 U.S.C. § 706(1) to compel agency action unlawfully withheld or unreasonably delayed, and under 28 U.S.C. § 1361 to mandate performance of a nondiscretionary duty. The USDA's failure to evaluate the pending REAP applications, while actively blocking procedural remedies, renders strict exhaustion unnecessary and impracticable under the law.

## STANDING

46.     Plaintiffs have standing to bring this action, as they meet the requirements of injury-in-fact, causation, and redressability. Plaintiffs have suffered concrete and particularized injuries, including direct financial losses of approximately $100 million due to the denial and rescission of REAP grants, operational costs and disruptions amounting to $2 million resulting from the USDA's actions, loss of business opportunities and partnerships estimated at $500 million, and reputational damage affecting future business prospects. These injuries are directly traceable to the USDA's actions in denying and rescinding REAP grants, as well as the agency's inconsistent and arbitrary application of evaluation criteria. The relief sought in this lawsuit, including the setting aside of the USDA's decisions, declaratory judgment, and mandamus, would redress Plaintiffs' injuries by enabling fair reconsideration of their REAP grant applications and restoring their grant funding.

47.     Each named plaintiff has suffered distinct and palpable injuries that confer standing to challenge the USDA's actions.

48.     In particular, the Ovanova Plaintiffs have independent and direct standing to bring claims in this matter. Ovanova served as the technical lead, grant architect, and primary organizer

for the REAP applications challenged herein. Acting in coordination, the Ovanova Plaintiffs developed, structured, and submitted the applications on behalf of the named applicants. Their contributions included engineering schematics, financial models, energy audits, regulatory documentation, and comprehensive project management. Without Ovanova's leadership and expertise, the submission of these applications would have been functionally impossible. The USDA's failure to act has caused Ovanova to suffer concrete and particularized injuries, including unreimbursed development costs, disruption of contracted solar deployment schedules, lost business opportunities, and reputational damage in both the energy and agricultural sectors.

49.     These harms are directly traceable to the agency's inaction and refusal to evaluate the Plaintiffs' REAP applications, all of which were timely submitted but have languished beyond the USDA's own published deadlines, some by more than 17 months. Despite repeated inquiries, the agency has failed to issue any final determination on these applications, rendering administrative appeal procedures unavailable.

50.     Moreover, USDA officials have threatened that if litigation were pursued, the applications would "never be graded," further compounding the harm and chilling any attempt at redress through lawful means.

51.     The injuries suffered by Plaintiffs, including Ovanova, stem from this pattern of unlawful delay, retaliatory posture, and administrative abandonment.

52.     The relief sought in this action includes declaratory and injunctive relief establishing that the USDA violated its statutory and regulatory obligations under REAP by failing to timely and fairly evaluate Plaintiffs' applications. Plaintiffs do not seek re-evaluation of denied applications, nor do they ask the Court to compel grading of applications where the funding cycle has since expired or procedural harm has already occurred. Rather, Plaintiffs seek a determination

that the USDA's failure to act constituted a constructive denial in violation of the Administrative Procedure Act, and an order enjoining the Agency from applying retroactive or unpublished criteria, selectively delaying processing, or penalizing applicants in future cycles for delays caused solely by the Agency's own conduct. The USDA's conduct, consisting of extended silence beyond its own published deadlines, internal threats to "never grade" the applications if litigation were filed, and a pattern of issuing arbitrary denials solely to route applicants into an opaque and futile appeals process, constitutes both unlawful withholding and unreasonable delay under the Administrative Procedure Act, 5 U.S.C. § 706(1), as well as arbitrary and capricious agency action under § 706(2)(A).

53.     Further, these actions infringe upon the Plaintiffs' First Amendment rights by retaliating against their protected activity, specifically, their right to seek judicial redress, through threats of punitive non-evaluation.

54.     Without judicial intervention, the USDA's behavior will continue to deprive applicants of statutory entitlements, frustrate congressional intent, and chill lawful oversight of agency misconduct.

**FACTUAL BACKGROUND**

**Overview of the REAP Program**

55.     REAP is a federal grant and loan initiative administered by the USDA through its Rural Business-Cooperative Service, pursuant to statutory authority under 7 U.S.C. § 8107, as amended by the 2008 Farm Bill. The program's core purpose is to promote energy independence, resiliency, and sustainability in rural America by providing financial assistance to agricultural producers and rural small businesses for eligible renewable energy systems and energy efficiency improvements. As reflected in the Federal Register (Vol. 87, No. 241, Dec. 16, 2022, p. 77059),

REAP is designed to help these stakeholders reduce energy costs and consumption and to contribute to meeting the Nation's critical energy needs. Yet the Agency has selectively penalized applicants, including Plaintiffs, for referencing ancillary benefits such as participation in Virtual Power Plant (VPP) programs, despite no statutory or regulatory prohibition on such benefits and despite their alignment with national energy resiliency goals.

56.    REAP is designed to support small-scale, on-site renewable energy installations, such as solar photovoltaic and battery storage systems, and is specifically tailored to overcome the financing barriers that rural operators face in adopting resilient clean energy technologies. Qualified applicants can receive grant funding of up to 50% of eligible project costs, with the balance often financed through tax credits, loans, or other incentives, including those authorized under the Inflation Reduction Act.

57.    REAP is governed by 7 CFR § 4280, Subpart B, which establishes criteria for eligibility, application submission, technical review, and scoring. Under longstanding USDA policy and published guidance, REAP applications are accepted quarterly and must be scored and reviewed within approximately 90 days of submission, ensuring a predictable evaluation cycle and preserving applicants' eligibility for related tax incentives and procurement schedules. Applications are assessed based on three primary criteria: Technical merit of the proposed system; Financial feasibility of the project and applicant; Environmental benefits and energy impact.

58.    The USDA historically conducted technical evaluations of REAP applications internally, but in late 2023, in response to expanded funding under the Inflation Reduction Act and a surge in application volume, the Agency began contracting with NREL to assist with technical scoring. While NREL began grading applications in 2024, the transition coincided with the introduction of evolving and unpublished technical review standards, including ad hoc criteria and

scoring methodologies not formally adopted through rulemaking or communicated in advance to applicants. These shifting standards—particularly when applied retroactively—have disrupted the consistency, transparency, and reliability of the evaluation process, undermining applicants' ability to meet unknown benchmarks and contributing to arbitrary outcomes.

59.    For the 2024–2025 application cycle, the USDA encouraged widespread participation through outreach and published guidance that preserved, at least on its face, the same technical and financial standards that had governed prior successful rounds. Applicants, including the Plaintiffs, submitted their grant packages in good faith reliance on those representations, the published submission deadlines, and the Agency's historical review timeline.

60.    Despite these assurances, the USDA failed to conduct timely grading or evaluation of the vast majority of applications within its published 90-day window, with many applications remaining unprocessed for nine months or more. Although the Agency ultimately resumed partial grading activity, it simultaneously shifted to new and unpublished evaluation standards and later announced that it would not complete the review of previously submitted applications, instead requiring re-submission beginning October 1, 2025. This breakdown in the review process, coupled with the retroactive application of undisclosed criteria, forms the core basis for Plaintiffs' claims of unlawfully withheld agency action and violations of the USDA's nondiscretionary statutory duties under both the Administrative Procedure Act and the Rural Electrification Act.

**Urgency and Potential Irreparable Harm**

61.    The nature of the REAP grant applications at issue, and their connection to time-sensitive federal tax incentives, creates an urgent and exceptional situation. If not addressed promptly, the USDA's inaction could cause irreversible harm to the Plaintiffs and the rural communities they serve.

62.    The USDA's failure to timely evaluate grant applications submitted during Fiscal Years 2023 and 2024 has placed Plaintiffs in a precarious financial and operational position. These delays threaten to push otherwise eligible projects into subsequent fiscal cycles, disqualifying them from time-sensitive tax incentives and financing structures, including those authorized under the Inflation Reduction Act. The uncertainty surrounding application status, coupled with evolving Agency policies, has impaired Plaintiffs' ability to plan, contract, and secure funding for rural energy projects nationwide.

63.    These tax incentives are essential components of the financing structure for rural renewable energy projects. Their loss would make many projects financially infeasible, leading to widespread cancellations, stranded investments, and unrecoverable losses.

64.    The consequences extend well beyond the named Plaintiffs. REAP's statutory mission is to promote clean energy access and economic development in rural America. By failing to timely process applications that were submitted in good faith, USDA is actively depriving rural communities of new energy infrastructure, job creation, and economic resilience.

65.    Many of the projects affected by this delay are designed to enhance energy security and grid reliability in disadvantaged or underserved communities. The indefinite withholding of evaluations leaves these communities vulnerable to prolonged energy insecurity.

66.    Ovanova and similarly situated applicants have already devoted significant time, resources, and capital into preparing these projects based on USDA's published deadlines and program guidance. The USDA's unilateral suspension of evaluation has disrupted those efforts, resulting in ongoing operational costs and logistical losses.

67.    The continued uncertainty also threatens reputational damage. Delayed or canceled projects erode trust among local partners, investors, and agricultural clients—jeopardizing future

collaborations and causing cascading economic consequences, including lost opportunities valued in the hundreds of millions of dollars.

68.    These delays also undermine broader federal clean energy initiatives and violate the USDA's statutory obligations under the Rural Electrification Act and the REAP program rules.

69.    The harm Plaintiffs face is not merely financial. The loss of eligibility for IRA tax credits and the inability to complete shovel-ready projects constitutes irreparable harm that cannot be remedied by monetary damages alone. It threatens to permanently alter Plaintiffs' ability to participate in the rural renewable energy sector and set back clean energy deployment for years.

70.    The urgency is compounded by the approaching September 30 fiscal year-end, after which many tax and incentive windows may close. Judicial intervention is necessary to prevent irreparable harm and ensure that the USDA performs its non-discretionary duty to evaluate submitted REAP applications within a reasonable timeframe, consistent with law and agency representations.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment

*(28 U.S.C. § 2201; 5 U.S.C. § 706(1))*

71.    Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

72.    The Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), authorizes judicial review to compel agency action that is unlawfully withheld or unreasonably delayed. To state a claim under § 706(1), a plaintiff must identify (1) a discrete agency action (2) that the agency is legally required to perform, and (3) that has been unlawfully withheld or delayed.

73.    The USDA Rural Development ("USDA") is legally obligated to evaluate REAP grant applications that are timely submitted by eligible applicants, consistent with its own

regulations under 7 C.F.R. § 4280 et seq., and applicable program Notices of Funding Opportunity (NOFOs). Under these rules, the USDA committed to reviewing and scoring applications submitted by quarterly deadlines, including the deadline of October 1, 2024, for the FY2025 cycle.

74.     Plaintiffs submitted over 90 complete REAP applications in reliance on the USDA's published rules and quarterly submission deadlines, including deadlines falling on September 30, December 31, March 31, and June 30. However, the USDA failed to take any grading or evaluative action within the 90-day review window following each respective submission. Instead, as of April 2024, the Agency instructed State Offices to halt processing for certain applications and later suspended grading activity altogether for Plaintiffs' portfolio. Without legal authority or formal rulemaking, the USDA subsequently announced that all applicants must withdraw and resubmit their applications after July 1, 2025. The Agency further stated that even previously approved applications would be subject to newly introduced technical merit requirements, retroactively imposed without notice or justification.

75.     Plaintiffs and similarly situated applicants are thus left in procedural limbo, facing regulatory uncertainty and financial harm, with no clear adjudication of their applications and no administrative recourse. This indefinite withholding of adjudicatory action constitutes agency inaction reviewable under 5 U.S.C. § 706(1).

76.     Because USDA has failed to perform its nondiscretionary duty to evaluate timely-submitted REAP applications in accordance with existing program rules, Plaintiffs seek a declaratory judgment and an order compelling USDA to promptly perform such evaluations under the criteria in place at the time of submission.

### SECOND CLAIM FOR RELIEF

### Violation of the Mandamus Act, 28 U.S.C. § 1361

77.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

78.     Mandamus relief is appropriate under 28 U.S.C. § 1361 when (1) the plaintiff has a clear legal right to the performance of a duty; (2) the agency has a clear and ministerial duty to act; and (3) there is no other adequate remedy available.

79.     Here, USDA has a clear, ministerial obligation to evaluate REAP applications that were timely submitted in accordance with 7 C.F.R. § 4280 and the REAP NOFO governing the FY2025 cycle. The obligation to review such applications is not discretionary; it is fundamental to the proper administration of the grant program and necessary for funding determinations.

80.     Plaintiffs have a clear legal right to such evaluation, having submitted fully compliant applications by the USDA's published October 1, 2024, deadline. They relied on agency guidance and policy representations that applications would be scored and awarded in accordance with stated technical and financial criteria.

81.     USDA's refusal to evaluate these applications, coupled with its requirement that applicants resubmit under a future cycle, represents an effective cancellation of the current funding round, without notice, formal decision, or rulemaking—and leaves Plaintiffs without any alternative remedy.

82.     Plaintiffs seek a writ of mandamus pursuant to 28 U.S.C. § 1361 compelling Secretary Rollins, in her official capacity as the Secretary of Agriculture, to ensure that appropriate USDA personnel perform their mandatory duty to evaluate and score all properly submitted REAP applications under the applicable rules in place at the time of submission and to do so within a timeframe that preserves Plaintiffs' eligibility for REAP funding and associated tax incentives.

### THIRD CLAIM FOR RELIEF

### Unlawful Retroactive Rulemaking and Constructive Denial of Process

*(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2))*

83.    Plaintiffs repeat and reallege all preceding paragraphs as if fully set forth herein.

84.    Defendant Basil Gooden, in his official capacity as Under Secretary for Rural Development, exercises supervisory authority over the administration and policy implementation of the REAP program. Plaintiffs allege that Under Secretary Gooden was directly involved in approving or ratifying the informal policy directive issued in or around April 2024 that instructed USDA state offices to pause grading of REAP applications involving BESS. This directive was never codified through rulemaking nor disclosed to applicants, but had the effect of unlawfully suspending evaluation of dozens of submitted applications. Gooden's involvement in this pause policy, and failure to ensure transparency or due process, constitutes agency action unlawfully withheld and may constitute ultra vires conduct beyond the scope of delegated authority under 7 U.S.C. § 8107.

85.    Defendant Debra Yocum, in her official capacity as Branch Chief for Field Operations within the Rural Business-Cooperative Service, served as a primary operational gatekeeper between the REAP program's internal scoring staff, state USDA offices, and NREL. In this capacity, Yocum had knowledge of and ratified the retroactive application of new technical merit scoring criteria, including unpublished rules developed by NREL during the 2024 grading cycles. Yocum was also directly responsible for managing requests for supplemental documentation and communicating procedural guidance to state officers, but failed to enforce or implement the 15-day deficiency notice requirement formally codified in the Federal Register (Vol. 89, No. 135, July 15, 2024). Her failure to ensure uniform procedural safeguards caused widespread inconsistency and prejudice to Plaintiffs.

86.    Defendant John Beeler, in his official capacity as Regional Coordinator for USDA's Northeast Region, was directly involved in administrative decision-making impacting

Plaintiffs' applications filed in multiple states under his jurisdiction. Beeler engaged in direct communications with certain applicants and made representations suggesting that grading was paused as a matter of discretion due to "ongoing internal issues" and that "no decisions would be made until further notice." Defendant Beeler also participated in recorded conversations in which USDA officials suggested that if litigation were filed, applications "would never be graded." These statements, if substantiated, may constitute impermissible retaliatory conduct under the First Amendment and provide grounds for finding that Beeler acted outside the lawful scope of discretion afforded by USDA rules.

87.    Defendants John Does 1–10 are USDA employees, including state REAP program coordinators, regional scoring reviewers, and NREL technical staff acting under USDA direction, who were involved in: issuing or disseminating informal grading pause orders; selectively applying new technical standards to previously submitted applications; communicating threats of non-review in response to protected legal activity; and failing to provide legally required deficiency notices or curing opportunities. Plaintiffs will seek to identify and name these individuals through discovery and FOIA production.

88.    Under the APA, 5 U.S.C. § 706(2), courts must set aside agency action, findings, or conclusions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This includes agency actions that rely on retroactively applied standards or are issued without observance of required procedures, including notice-and-comment rulemaking.

89.    The USDA, in conjunction with NREL, has introduced new technical merit review standards and scoring requirements for battery-integrated renewable energy projects. These standards were not adopted through notice-and-comment rulemaking, have not been codified in regulation, and are labeled "advisory only" in their most recent guidance documents.

90.     Nevertheless, the agency has begun applying these new standards to previously submitted applications, including those already deemed complete, and has required resubmission of compliant applications on the basis of these evolving standards. This conduct constitutes unlawful retroactive rulemaking and a constructive denial of the applications without due process.

91.     The USDA's conduct further violates Plaintiffs' reliance interests and undermines the integrity of the REAP program by effectively changing the rules of eligibility after submission, without lawful authority or procedural justification. These actions are arbitrary, capricious, and contrary to law.

92.     Plaintiffs seek declaratory and injunctive relief to prevent the USDA from applying new technical merit criteria retroactively, and from conditioning the evaluation of existing submissions on withdrawal or resubmission under materially different rules.

**FOURTH CLAIM FOR RELIEF**

**Injunctive and Equitable Relief**

*(APA § 706; Federal Rule of Civil Procedure 65; Equitable Tolling Doctrine)*

93.     Plaintiffs repeat and reallege the foregoing paragraphs as if fully set forth herein.

94.     In addition to declaratory and mandamus relief, Plaintiffs seek preliminary and permanent equitable relief to prevent further irreparable harm stemming from the USDA's refusal to evaluate pending REAP applications submitted within the designated 2024–2025 application window.

95.     Absent immediate judicial intervention, the USDA's inaction will deprive Plaintiffs and similarly situated applicants of access to critical funding mechanisms and jeopardize their eligibility for time-sensitive federal incentives, including those available under the Inflation Reduction Act. The agency's refusal to evaluate submitted applications, and its stated intention to

reopen the program for new submissions while disregarding prior ones, constitutes an effective nullification of Plaintiffs' participation without due process or administrative recourse.

96.    Plaintiffs seek injunctive relief prohibiting the USDA from rejecting, ignoring, or conditioning the evaluation of previously submitted applications on resubmission. They further seek equitable tolling of program deadlines and any federally linked tax incentive timelines to ensure that Plaintiffs' rights and expectations are preserved notwithstanding the agency's delay.

97.    This Court has authority under the Administrative Procedure Act, Federal Rule of Civil Procedure 65, and equitable principles to enjoin unlawful agency action and preserve the status quo. The irreparable nature of the harm, the unavailability of adequate monetary relief, and the public interest in the lawful administration of federal grant programs all weigh decisively in favor of injunctive and equitable relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

1. Declaratory Relief pursuant to 28 U.S.C. § 2201, declaring that:

    (a) The USDA's refusal to evaluate REAP grant applications timely submitted during the FY2024–2025 program cycle constitutes agency action unlawfully withheld or unreasonably delayed in violation of 5 U.S.C. § 706(1);

    (b) The USDA's requirement that applicants withdraw and resubmit those applications constitutes a de facto denial rendered without procedural due process and violates fundamental principles of administrative law, including fair notice and reliance;

(c) The USDA is obligated to evaluate said applications based on the criteria, procedures, and technical merit framework in effect at the time of original submission.

2. **Mandamus Relief** pursuant to 28 U.S.C. § 1361, compelling Defendant Rollins to ensure that appropriate USDA officials:

(a) Acknowledge and affirm that the USDA's failure to timely review and score REAP grant applications submitted by Plaintiffs and other applicants on or before October 1, 2024, violated the Administrative Procedure Act and applicable program rules, and enjoin the Agency from penalizing those applicants in future funding cycles for delays or procedural lapses attributable to the Agency's own conduct;

(b) Cease the application of retroactive or unpromulgated evaluation criteria to any REAP applications submitted by Plaintiffs and other applicants on or before October 1, 2024, and declare that only those evaluation standards in force at the time of submission shall govern any future consideration or re-submission of such projects;

(c) Establish and implement a fair and transparent process, subject to this court's oversight, for promptly evaluating all resubmitted applications originally filed during the Fiscal Year 2023–2024 cycle, within a timeframe sufficient to preserve eligibility for federal funding and time-sensitive incentives, and to prevent further harm resulting from the USDA's prior delay or inaction.

3. **Injunctive Relief** pursuant to the APA, Rule 65 of the Federal Rules of Civil Procedure, and this Court's equitable powers, preliminarily and permanently enjoining the USDA from:

(a) Rejecting, suspending, or constructively voiding timely submitted REAP applications based on internal program pauses or informal administrative guidance;

(b) Applying new technical merit review standards, scoring rubrics, or documentation requirements retroactively to applications submitted prior to their issuance;

(c) Conditioning the evaluation or continued processing of said applications on withdrawal and resubmission after October 1, 2025.

4. **Equitable Tolling and Preservation of Eligibility**, ordering that:

(a) Any deadlines imposed by USDA regulations, the REAP NOFO, or related federal programs, including but not limited to Inflation Reduction Act tax incentive timelines, be equitably tolled for affected applicants;

(b) Plaintiffs' and class members' eligibility for funding and associated benefits be preserved notwithstanding the agency's delay or refusal to evaluate pending applications.

5. **Attorneys' Fees and Costs** pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, or other applicable law, awarding Plaintiffs all reasonable costs, disbursements, and attorneys' fees incurred in connection with this action.

6. **Reservation of Rights** to seek monetary and compensatory relief in a separate proceeding, to the extent that USDA issues final agency actions unlawfully denying or rescinding REAP grants without adherence to governing law.

7. **Further Relief**, granting such other and additional relief as this Court deems just, equitable, and appropriate in the interests of administrative fairness and rural energy development.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 25, 2025

Respectfully submitted,

/s/ *Alex Menendez*

Alex Menendez (D.C. Bar No. 470475)
Gregory Sussman (D.C. Bar No. 1029911)
**WATKINSON MILLER PLLC**
1100 New Jersey Ave. SE, Suite 910
Washington, D.C. 20003
Tel: 202.842.2345
amenendez@watkinsonmiller.com
gsussman@watkinsonmiller.com

James A. Wolff (NY Bar No. 5523204)
(Application for admission pro hac vice
forthcoming)
**WARSHAW BURSTEIN, LLP**
575 Lexington Avenue, 7th Floor
New York, NY 10022
Tel: 212.984.7795
JWolff@wbny.com

*Counsel for Plaintiffs*