**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **OVANOVA CONSTRUCTION SERVICES LLC,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*, <br><br> **Defendants.** | **Civil Action No. 25-2843 (JEB)** |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Ovanova Construction Services LLC and its associated entities sell mobile-energy grids to American farmers.  As part of that work, they help their customers apply for funding from the U.S. Department of Agriculture's Rural Energy for America Program (REAP).  Last year, this Court dismissed their lawsuit contesting a batch of REAP-application denials, reasoning that the Ovanova entities lacked standing to challenge USDA's grant decisions when they themselves were not applicants.  Hoping that a second effort will prove more fruitful, the companies have returned, this time with a crop of REAP applicants and a somewhat different set of arguments in tow.  In this new suit, Plaintiffs — now comprising the Ovanova Plaintiffs alongside the REAP applicants — allege that USDA has shirked its obligations to timely decide grant applications, leaving many of their submissions undecided for over a year.  They seek a court order compelling the Department to act.  The Government once again moves to dismiss, arguing that Plaintiffs still lack standing and still have not exhausted their administrative

1

remedies.  The Court agrees: Plaintiffs cannot reap what they did not sow.  It will thus grant Defendants' Motion to Dismiss.

## I.    Background

REAP aims to "promote energy independence, resiliency, and sustainability in rural America by providing financial assistance to agricultural producers and rural small businesses for eligible renewable energy systems and energy efficiency improvements."  ECF No. 1 (Compl.), ¶ 55.  To apply for a REAP grant, applicants submit detailed proposals that explain the environmental impact, technical specifications, and financial projections for their project.  Id., ¶ 57.  USDA then assesses each application in accordance with regulatory criteria.  Id., ¶¶ 57–59.

The Ovanova Plaintiffs are renewable-energy developers who provide solar and battery-storage systems to rural businesses and agricultural producers.  Id., ¶ 2.  These projects tend to be REAP funded, so the Ovanova companies — who are ineligible for grants themselves — will often help their customers submit grant applications.  Id.  In 2024, the Ovanova Plaintiffs brought their first lawsuit against USDA, claiming that the Department's denial of roughly 60 REAP applications — all submitted by Ovanova clients — violated the Administrative Procedure Act because USDA had evaluated the funding requests in an arbitrary and capricious manner, had violated its statutory mandate, and had implemented new criteria without proper notice or opportunity for public comment.  Ovanova, Inc. v. U.S. Dep't of Agric., No. 24-2769, ECF No. 1 (Compl.), ¶¶ 62–63, 129–63 (D.D.C. Sept. 27, 2024).

USDA moved to dismiss, arguing in part that the Ovanova entities, who had not applied for REAP grants themselves but had merely assisted others in applying, lacked standing to pursue these claims.  Ovanova, No. 24-2769, ECF No. 27-1 (MTD) at 9–14.  The Court agreed and granted the motion in full, finding that the Ovanova entities did not have standing to bring

suit over the application denials and that, even if they did, the suit would have been foreclosed by their failure to exhaust administrative remedies. Ovanova, Inc. v. U.S. Dep't of Agric., 2025 WL 343118, at *2–6 (D.D.C. Jan. 30, 2025).

Returning to the drawing board, Plaintiffs emerged with this current lawsuit half a year later. Their new claims largely echo the prior ones, but with two key differences. First, numerous REAP applicants have joined the lawsuit as Plaintiffs. See Compl., ¶¶ 17–32. Second, rather than challenging the denial of REAP applications, Plaintiffs now contest USDA's delay in deciding a new set of such applications, which they allege have gone unprocessed for over 18 months in violation of the APA. Id., ¶ 3. Unlike in the first lawsuit, Plaintiffs "do not . . . seek relief on behalf of any applications that have already received final denial." Id., ¶ 6. Instead, they seek declaratory and injunctive relief compelling consideration of the pending applications. Id. at ECF pp. 28–30.

The Government once again moves to dismiss, raising a cornucopia of supporting arguments. See ECF No. 13-1 (MTD). The Court need only address the first few.

## II.    Legal Standard

When a defendant files a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff generally "bears the burden of establishing jurisdiction by a preponderance of the evidence." Bagherian v. Pompeo, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 172–73 (D.D.C. 2020)); see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC,

642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), conversely, a complaint must "state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). While a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

III.    Analysis

The Court begins, as it must, with the question of whether Plaintiffs have Article III standing before turning to the merits.

A.    Standing

Article III of the Constitution limits the jurisdiction of the federal courts to resolving "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. Contained within that limitation is the "essential and unchanging" requirement that a party establish standing before a court may hear its case. Lujan, 504 U.S. at 560. To have standing, a plaintiff must first show that he "suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. (quotation marks, citations and footnote omitted). Second, "there must be a causal connection between the injury and the conduct complained of," meaning that the injury is "traceable to the challenged action of

4

the defendant." Id. (cleaned up). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. at 561 (quotation marks omitted). A "deficiency on any one of the three prongs suffices to defeat standing." US Ecology, Inc. v. U.S. Dep't of the Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).

Standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required" for each phase of the lawsuit. Lujan, 504 U.S. at 561. At the nascent motion-to-dismiss stage, accordingly, standing is evaluated generously, with the court assuming the truth of a plaintiff's allegations and drawing all inferences in his favor. "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice" to plead standing because courts "presume that general allegations embrace those specific facts that are necessary to support the claim." Id. (cleaned up). More is required, however, than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. That said, plaintiffs need not toil over "detailed factual allegations" of standing to survive a motion to dismiss. Id. (quoting Twombly, 550 U.S. at 555).

The Government raises objections to the standing of both the Ovanova entities and the REAP applicants. The Court will take each inquiry in turn.

### 1.    *Ovanova Entities*

Remembering that the Court's last Opinion found Ovanova's standing lacking, Defendants reasonably open their Motion by suggesting that claim preclusion, also known as *res judicata*, bars this latest endeavor. See MTD at 10–12. This is not quite right. Contrary to USDA's contentions, a prior "dismissal for lack of subject-matter jurisdiction does not preclude a second action on the same claim." 18 Wright & Miller's Federal Practice & Procedure § 4436 (3d ed. Apr. 2026 update); see also Fed. R. Civ. P. 41(b) (explaining that dismissal for lack of

5

jurisdiction does not "operate[] as an adjudication on the merits," as is required for claim

preclusion).  Although issue preclusion (or collateral estoppel) is generally available to bar the

re-adjudication of previously litigated standing objections, Cutler v. Hayes, 818 F.2d 879, 888

(D.C. Cir. 1987), preclusion of any kind ultimately plays no role in this case.  That is because

Ovanova's underlying claims have changed between the first lawsuit and this one.  While their

2024 suit took issue with USDA's denial of REAP applications, this new Complaint focuses on

the Department's inaction.  Compare Ovanova, No. 24-2769, Compl., ¶ 46 (D.D.C. Sept. 27,

2024), with Compl., ¶ 40.  As standing is analyzed with respect to each specific claim,

Waterkeeper All., Inc. v. Regan, 41 F.4th 654, 660 (D.C. Cir. 2022), it cannot be said that

Ovanova's standing as to these new contentions of agency delay is an issue previously litigated.

Even absent preclusion, however, the Ovanova Plaintiffs' claims are tripped up by the

same pitfalls as last time.  To their credit, the companies add marginally more detail of their

injuries this go-round, alleging that USDA's actions caused them to suffer "unreimbursed

development costs, disruption of contracted solar deployment schedules, lost business

opportunities, and reputational damage in both the energy and agricultural sectors."  Compl.,

¶ 48.  Financial and reputational injuries certainly constitute concrete and particularized injuries.

See Twin Rivers Paper Co. LLC v. SEC, 934 F.3d 607, 616 (D.C. Cir. 2019) (financial injuries);

Bost v. Ill. State Bd. of Elections, 146 S. Ct. 513, 520 (2026) (reputational injuries).

Yet, just as last time, their new Complaint continues to be "insufficiently specific" about

how Ovanova's injuries "are caused by USDA's alleged actions, and whether success in this

lawsuit can provide relief."  Ovanova, 2025 WL 343118, at *3.  On these issues, it offers only

the threadbare legal conclusion that "[t]he USDA's failure to act has caused Ovanova to suffer

concrete and particularized injuries."  Compl., ¶ 48.  True, standing need not be alleged with

minute specificity at this stage, but the Complaint does not supply a single fact to explain how USDA's treatment of others' applications ultimately affects the Ovanova Plaintiffs. These entities are not grant applicants themselves, and the same questions posed by the Court last time remain unanswered here: "Do [the Ovanova] Plaintiffs, for example, receive payment only if the client's grant application is approved? Alternatively, do they earn their keep by receiving contracts to build the renewable-energy projects once their clients' applications are approved? Do they fear that they will lose business if word gets around that their applications are now [left undecided] more frequently than applications submitted by others?" Ovanova, 2025 WL 343118, at *4. In other words, how exactly does USDA's lack of timely action injure Ovanova? The Complaint never says. Instead, it makes two irrelevant points. First, Plaintiffs maintain that "[w]ithout Ovanova's leadership and expertise, the submission of these applications would have been functionally impossible." Compl., ¶ 48. Sure. But Ovanova's indispensable assistance tells us little about how and why they would be injured by unprocessed applications. Second, the Complaint confusingly contends that Plaintiffs' "injuries are directly traceable" to entirely different USDA conduct: the agency's "denying and rescinding [of] REAP grants." Id., ¶ 46. In addition to being wholly conclusory, this assertion is inconsistent with the current suit and again tells the Court nothing about how Ovanova's injuries link back to USDA's delay in processing REAP applications.

As is often the case, redressability follows causation here. Carpenters Indus. Council v. Zinke, 854 F.3d 1, 6 n.1 (D.C. Cir. 2017) ("Causation and redressability typically 'overlap as two sides of a causation coin.'") (quoting Dynalantic Corp. v. Dep't of Def., 115 F.3d 1012, 1017 (D.C. Cir. 1997)). Because Plaintiffs have not adequately explained how Ovanova's injuries are

caused by USDA, it remains equally opaque how a favorable decision commanding the Government to act on the REAP applications would redress their injuries.

As the Ovanova entities have again failed to plead causation and redressability, the Court will dismiss their claims for lack of jurisdiction.

### 2.    *REAP Applicants*

Now on to the applicants themselves.  According to the Complaint, Plaintiffs contest USDA's snail's-pace treatment of their REAP applications, all of which were timely filed before October 2024 and remain unprocessed as of today.  See Compl., ¶¶ 40–41.  Plaintiffs allege that the Department is required to review applications within 90 days, and USDA's delay in processing their 81 pending grant requests has resulted in harmful downstream consequences, keeping the applicants in a "procedural limbo," id., ¶ 40, that has left them "in a precarious financial and operational position."  Id., ¶ 62.  For example, the businesses have been unable to qualify for "time-sensitive tax incentives" that are essential for financing energy projects.  Id. The delay has also otherwise "impaired Plaintiffs' ability to plan, contract, and secure funding for rural energy projects."  Id.

In so asserting, the REAP applicants satisfy all three prongs of Article III standing. While the purely procedural injury of a delay cannot itself constitute injury-in-fact, concrete downstream consequences flowing from such a delay can.  Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 96 (D.D.C. 2024); see also WildEarth Guardians v. Jewell, 738 F.3d 298, 305 (D.C. Cir. 2013).  In this case, the applicant's resulting financial injury certainly suffices.  Sugar Cane Growers Co-op. of Fla. v. Veneman, 289 F.3d 89, 93–94 (D.C. Cir. 2002).  Unlike with the Ovanova companies, the causal relationship between the applicants' injuries and USDA's inaction is clear: Plaintiffs' injuries result directly from USDA's not processing their

8

applications.  Redressability likewise is satisfied: a decision from this Court compelling the agency to act would alleviate the "limbo" causing their injuries.

USDA's main contention seems to be that the REAP applicants have not pled their injuries with enough specificity.  See MTD at 21 (noting that Plaintiffs have not identified specific "business opportunities" lost or "operational costs" incurred); ECF No. 15 (Reply) at 7 (critiquing Plaintiffs' lack of "particularized facts about any individual applicant").  The Complaint is certainly far from detailed.  At this stage of litigation, however, the level of specificity that USDA seeks is not required.  The D.C. Circuit has accepted "general factual allegations of injury resulting from [a] defendant's conduct" to support standing for pleading purposes.  Frank v. Autovest, LLC, 961 F.3d 1185, 1187 (D.C. Cir. 2020) (quoting Lujan, 504 U.S. at 561).

For example, in Frank v. Autovest, a case arising under the Fair Debt Collection Act, the plaintiff asserted in her complaint that she "was deceived by the Defendants' false, deceptive and misleading representations" regarding her car's payment plan; that she suffered "agitation, annoyance, emotional distress, and undue inconvenience"; and that she "incurred actual damages including . . . attorney's fees and costs."  Id. at 1187.  The Circuit found that in so pleading, plaintiff had "satisfied her burden" to show standing "at the pleading stage" — nothing more was needed.  Id.  Courts in this district have blessed similarly high-level theories of injury.  E.g., Magruder v. Cap. One, Nat'l Ass'n, 540 F. Supp. 3d 1, 8 (D.D.C. 2021) (accepting claim of economic injury for standing purposes even though plaintiff "neglect[ed] to explain how, when, where, or in what degree" he suffered economic harm, and complaint did not "identify a single expense that [plaintiff] incurred").  Plaintiffs may be required to substantiate their claims at later

9

phases of the litigation, but at the motion-to-dismiss stage, their general outline of financial injury linked to USDA's delay will suffice.

USDA next raises a prudential-standing argument, contending that the Court should dismiss the suit because the REAP applicants' claims fall outside "the zone of interests" protected by the governing statute. See MTD at 23 (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129 (2014)). This contention gains no traction. Prudential standing asks a court to examine whether a plaintiff's claimed interest is the kind that Congress intended to protect in enacting the relevant statute. Lexmark, 572 U.S. at 129. The test is "not especially demanding" in the APA context. Id. (quotation marks omitted). In any case, it is easily met here. The statute establishing REAP identifies "agricultural producers and rural small businesses" as the intended grant beneficiaries. See 7 U.S.C. § 8107(a). USDA's implementing regulations specifically permit REAP applicants to appeal adverse grant decisions. See 7 C.F.R. § 4280.105 ("The applicant or grantee can appeal any Agency decision that directly and adversely affects them."). In seeking timely resolution of their grant applications, the REAP applicants undoubtedly fall within the zone of interests contemplated by Congress.

Now satisfied that the applicants have pled Article III and prudential standing, the Court turns to USDA's remaining arguments — pertaining to these Plaintiffs alone.

B.    Tucker Act

The last of the Government's jurisdictional arguments concerns the Tucker Act, which confers on the Court of Federal Claims exclusive jurisdiction over contractual disputes with the United States. See 28 U.S.C. §1491(a)(1). USDA asserts that Plaintiffs' suit boils down to a contractual argument that the Government is "wrongfully withholding federal grant money"; as a result, this case may be heard only in the Court of Federal Claims. See MTD at 12.

In assessing whether a plaintiff's claims fall within the exclusive jurisdiction of that court, this Court examines the source of the rights at issue as well as the type of relief sought. Megapulse, Inc. v. Lewis, 672 F.2d 959, 967–68 (D.C. Cir. 1982). On both fronts, USDA comes up short. Plaintiffs' claims are based entirely on statutory and regulatory requirements for the Department, rather than any contractual obligations. The Complaint makes it clear that USDA's responsibility to timely decide applications derives entirely from the agency's own rules and regulations. See Compl., ¶ 3. As for the remedy sought, the REAP applicants do not ask for contractual damages — or any sort of monetary remedy — nor do they even posit that they are entitled to grant funding. Crowley Gov't Servs., Inc. v. Gen. Servs. Admin., 38 F.4th 1099, 1107–08 (D.C. Cir. 2022). Instead, Plaintiffs seek quintessential APA relief: injunctions and declaratory judgments compelling USDA to process their applications. See Compl., ¶¶ 6, 52. As this case begins and ends with USDA's statutory obligations, the Tucker Act poses no barriers to this Court's jurisdiction.

C.    Exhaustion

Having successfully emerged through the thicket of USDA's jurisdictional challenges, the REAP applicants next face the Government's exhaustion arguments. Unfortunately for them, this terrain proves too treacherous.

Litigants seeking to sue USDA must comply with 7 U.S.C. § 6912(e), which provides that a plaintiff "shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against" the agency. While this exhaustion requirement is not jurisdictional, it is nonetheless mandatory. Munsell v. Dep't of Agric., 509 F.3d 572, 580 (D.C. Cir. 2007).

As a threshold matter, the Court must first discern whether USDA has in fact instituted any administrative-appeals procedures for Plaintiffs' claims. If not, then they could proceed directly in this forum. Id. at 579 (no administrative-exhaustion requirement where agency-appeals procedure contemplated only appeals of "disputes over enforcement actions" and not kinds of policy disputes brought by plaintiff). Although Plaintiffs suggest that only final decisions on REAP applications must be administratively appealed — and thus they have no such remedy for delays in processing, see Compl., ¶ 40; ECF No. 14 (Opp.) at ECF pp. 14–15 — USDA's regulations specifically provide for appeals of agency delay and inaction. The administrative-appeal provision for REAP decisions, 7 C.F.R. § 4280.105, notes that all appeals will be handled "in accordance with" 7 C.F.R. § 11, which in turn defines appealable "adverse decision[s]" to include "the failure of an agency to issue a decision or otherwise act on the request or right of the participant within timeframes specified by agency program statutes or regulations or within a reasonable time if timeframes are not specified." Plaintiffs' objections to USDA's inaction are therefore subject to an administrative-exhaustion requirement under 7 U.S.C. § 6912(e). See Mdewakanton Sioux Indians of Minn. v. Zinke, 264 F. Supp. 3d 116, 127 (D.D.C. 2017) (finding agency's appeal procedure contemplated appeals of inaction and therefore plaintiff was subject to administrative-exhaustion requirement in suit over agency delay).

While Plaintiffs concede that they have not taken this step, they nonetheless maintain that their lawsuit should be permitted to proceed because any administrative appeal would have been futile. See Opp. at ECF pp. 14–15. In this Circuit, certain administrative-exhaustion requirements can be excused under exceptional circumstances when "resort to administrative remedies is clearly useless." Commc'ns Workers of Am. v. Am. Tel. & Tel. Co., 40 F.3d 426,

432 (D.C. Cir. 1994) (quotation marks omitted).  Here, however, the Court has no power to excuse Plaintiffs' failure to exhaust.

Administrative-exhaustion requirements can be either judicially or statutorily imposed. As to the latter, the D.C. Circuit has held that when a statute "imposes a mandatory exhaustion rule, . . . a court cannot excuse a party's failure to exhaust, no matter the reason." Fleming v. U.S. Dep't of Agric., 987 F.3d 1093, 1098 (D.C. Cir. 2021).  While "judge-made exceptions [such as futility] are available in the case of a judge-made exhaustion obligation, when an exhaustion requirement is imposed by statute, the only question is whether Congress intended any 'limits on a [litigant's] obligation to exhaust.'" Id. (quoting Ross v. Blake, 578 U.S. 632, 639 (2016)).  As to § 6912(e), the governing exhaustion provision in this case, the D.C. Circuit found that Congress placed no such limits. Id. at 1099 (concluding that § 6912(e) "leaves no latitude for judges to excuse non-exhaustion").  Plaintiffs' neglect of USDA's administrative-appeals processes thus leaves this Court unable to hear their suit.  Given this decision, it need not reach the Government's remaining arguments.

## IV.    Conclusion

The Court, accordingly, will grant Defendants' Motion to Dismiss.  An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 24, 2026

13